JAMES J. WORKMAN AND OTHERS *vs.* LOUISA C. BOLLING.

In April, 1863, a decree for money was made by the Ordinary in favor of legatees, some of whom were adults and some minors, against the executor of the will. The executor offered to pay the guardian of the minors their shares in Confederate money, and he having refused to receive payment in that currency, he, the executor, invested, in August, 1863, the amount of the decree, and nearly the whole of the interest that had accrued, in a Confederate States bond, for the benefit of the legatees : *Held*, That the investment did not discharge the executor, and that his executrix—he having died—was liable to the legatees for the amount of the decree.

When a decree for money is rendered against an executor in favor of legatees, the fiduciary relation of the parties ceases, and the executor can discharge himself only by payment, or by some other recognized legal mode of satisfying judgment debts.

BEFORE ORR, J., AT GREENVILLE, DECEMBER, 1870.

Appeal from the decree of the Circuit Court.

The case was heard in the Circuit Court on exceptions to the report of a Referee, which states the facts, and is as follows :

" The Clerk, to whom it was referred to ascertain and report upon the actings of T. C. Bolling, deceased, who was the executor of the last will and testament of Mrs. Mary A. Bolling, and to state the accounts between the estate of said executor and the estate of his testatrix, begs leave respectfully to submit the following report:

" Upon a reference before him, it appears that, on the 15th day of January, 1853, Mrs. Mary A. Bolling made and executed her last will and testament, and some years thereafter departed this life, leaving the same in full force and virtue. The testatrix, after first providing for the payment of her debts, directs her executor to sell all her estate, real and personal, and to divide the proceeds of said sale into four equal parts—said legacies to be held in trust by her executor for her four daughters; and that the interest of said legacies should be paid to her daughters annually by the executor; and upon the death of either or all of said daughters, their share should be then paid by the executor to the child or children which said daughters should leave surviving. She appointed T. C. Bolling executor of said will. It also appears that Major Bolling qualified as executor of said will, and proceeded to carry out the provisions of the same by taking charge of the estate, paying the debts, and selling the personal and real estate.

" Mrs. Sarah S. Sullivan, one of the daughters of testatrix, had departed this life previously to her mother's death, and the condition of the will, as to Mrs. Sullivan's share, was fulfilled immediately upon the death of the testatrix; and the children of Mrs. Sullivan, who are the complainants in this bill, were entitled to have their mother's share equally divided amongst themselves, as the will directed.

" It also appears that, soon after the death of the testatrix, Mary A. Sullivan, one of the legatees of this fourth interest, and a complainant, filed her petition with Robert McKay, Esq., the then Ordinary of Greenville District, to appoint a day for a settlement, and cite the executor to an accounting, and to compel him to pay over to herself and brothers and sisters the share to which their mother was entitled under the will of their grandmother, the said Mary A. Bolling. Upon this petition, the Ordinary made the following endorsement: " The executor being absent in Florida, ordered that he be cited on his return to show cause forthwith." This was the 3d October, 1861. On the 31st day of January, 1862, the executor filed a petition with the Ordinary for a final settlement of the estate; and on the 20th March the Ordinary issued his citations,

and appointed the 14th April following as the day for the final settlement. On that day it appears that the parties being all properly represented before the Ordinary, the Ordinary proceeded to sum up the estate, and there was found due by the executor the sum of eleven thousand and forty dollars and forty-five cents ($11,040.45,) and there was found due each one of the four legatees the sum of two thousand seven hundred and sixty dollars and eleven and one-quarter cents, ($2,760 11¼,) and this last named amount the Ordinary ordered, adjudged and decreed should be paid by the executor to the children of Mrs. Sarah S. Sullivan, equally, and their receipts for the same produced by the executor.

" The present action is brought by the complainants, who are the children of Mrs. Sullivan, to recover from the defendant, as executrix of Major Bolling, who was the executor, this amount of two thousand seven hundred and sixty dollars and eleven and one-quarter cents, and also any amount which may have come into the hands of the executor, or his. executrix, since the rendition of the decree of the Ordinary. The defence set up is, that the executor, Major Bolling, invested this amount claimed by the complainants in the bonds of the Confederate States, and that the defendant, as his executrix, is not liable to account for the same. What is the proof?

" It appears that the estate consisted, at the time of the decree by the Ordinary, in a great part, of notes, which were held by the executor for the estate, and most, if not all, of them, notes taken by the executor at the sale of the property. According to the testimony of Dr. J. M. Sullivan, the executor offered, on the day of settlement, to pay over to him, as guardian of his children, the share to which they were entitled in these notes, which he refused. Mr. McKay, the then Ordinary, thinks he offered to pay either notes or money, and, if money, it was Confederate money. Mr. Beattie testifies that the executor deposited Confederate money with him for Dr. Sullivan, on the 22d June, 1863, of which deposit he advised the Doctor by letter. Mr. L. H. Shumate testifies that the executor requested him to take the money to Dr. Sullivan. This he refused to do, but advised that it be deposited with Mr. Beattie. He advised the Doctor of the deposit; he refused to take it, saying he would take it from any one else, but would not from Bolling. Shumate informed Bolling of this refusal, and, thereupon, Bolling invested the same in the seven per cent. bonds of the Confederate States, for the benefit of Mrs. Sarah S. Sullivan's children, under

the will of Mary A. Bolling. On the other side, it appears, from the testimony of Jno. W. Stokes, Esq., that about the 20th June, 1862, Major Bolling refused to take Confederate money from him on notes belonging to this estate, alleging, as a reason for his refusal, that it would not be right to pay the interest to the parties in Confederate money. John J. Cooley, another witness for the complainants, testifies that in the summer or fall of 1863, Major Bolling refused to take Confederate money from him on a debt due this estate, saying it belonged to the legatees, and mentioned Sullivan and others.

"There is no allegation in the bill that the investment was made by the executor with a view to defraud the complainants; nor is there any proof that the same was done with a fraudulent intent. The allegation of the complainants is, that there was no authority from them for the investment. The presumption is, that it was done in good faith, and the Clerk, following the light of the decision made by the Supreme Court in 1867 and 1868, sustaining investments made in good faith, would respectfully recommend that the investment of the legacy of the complainants by the executor in the bonds of the Confederate States be sustained by this honorable Court; and that the defendant, as executrix of Major Bolling, shall not be required to account for, nor to pay over, to the complainants the sum of two thousand seven hundred and sixty dollars and eleven cents, the amount decreed by the Ordinary as due the children of Mrs. Sarah S. Sullivan, under the will of Mary A. Bolling, deceased. It appears, from the testimony of Mrs. Bolling, the executrix of the executor, that since the 14th April, A. D. 1862, the date of the decree of the Ordinary, she has sold some lands in Florida, belonging to the estate of Mrs. Mary A. Bolling, and the proceeds of said sale were not accounted for in said settlement, and in which the complainants are entitled to one-fourth. The Clerk would recommend that she be required to account before the Judge of Probate for this County for the moneys arising from said sales, and pay over to the complainants their distributive share of the same forthwith."

The complainants excepted to the report on the grounds:

1. Because so much of complainants' demand as was founded on the decree of the Ordinary in their favor against T. C. Bolling, as executor of Mary A. Bolling, deceased, was fully and irrevocably established by said decree, for so much money to be paid to them by said executor, divested of all trust, and they had no further interest

in the choses in action of said Mary A. Bolling's estate to that extent, as they became then the individual property of the executor, and he had no power or authority, whatever, to make any investment for them or any of them ; and that, in fact, the pretended investment for them was not of the funds of the estate, but his own, and without collecting the notes and other choses in action he held as executor.

2. Because there was no proof that said investment was made of the funds of complainants; but, on the contrary, the testimony showed that the executor did so with his own means, to get rid of his Confederate money and shift it off upon them, when the funds he held for them were not funds for investment, but to be paid over directly to them, and at once, as he was required to do by their judgment obtained against him before the Ordinary as aforesaid.

3. Because the report, so far as complainants are entitled to their share of the proceeds of the land sold since the Ordinary's decree, recommending that they be turned over to the Probate Court for that, is in violation of law and justice, when they are plainly entitled to relief in this Court.

4. Because if said executor had really and in fact invested complainants' funds, as alleged, it was an act done in aid of the late rebellion against the United States, and illegal and void.

ORR, J. This case has been heard upon the evidence taken in writing, the report of the Clerk, exceptions thereto, and the argument of counsel, and the Court is of opinion, and so adjudges, that Louisa C. Bolling, as executrix of Thaddeus C. Bolling, deceased, is liable to the complainants that were of legal age on 19th August, 1863, and not to those who were minors at that time, to the extent of fifty cents in the dollar on their interest in the estate of their grandmother, Mary C. Bolling, deceased. But as the Court is not informed how many of the complainants were of legal age at the date before specified, it is ordered that it be referred to the Clerk to inquire and report thereon, and, also, to report the amount due such complainants as were of legal age at the period referred to. All other matters reserved until the coming in and confirmation of said report.

Under this order the Referee submitted a second report, as follows :

"He has examined Dr. James M. Sullivan, and reports that two of Dr. Sullivan's children were of age at the time of the investment, to wit: On the 19th August, 1863, viz: Mary Ann Sulli-

van, now Mary Ann Workman, and Frances M. Sullivan, now Frances M. McDavid.

"He further reports, that they were each entitled to one-seventh of two thousand seven hundred and sixty dollars and eleven cents, the amount decreed by the Ordinary, on the 14th April, 1862, as due the children of Mrs. Sarah S. Sullivan. The one-seventh is three hundred and ninety-four 30-100 dollars; and interest on same, from 14th April, 1862, to December 8th, 1870, is two hundred and thirty-eight 43-100 dollars, making, principal and interest, $632.73. One-half would be $316.36½.

"The Clerk, therefore, reports three hundred and sixteen 36-100 dollars as the amount due to Mrs. Mary Ann. Workman and Mrs. Frances M. McDavid, each, on the 8th December, 1870, under the instructions from your Honor.

"The Clerk further reports, that the complainants are entitled to the one-fourth of twelve hundred dollars, the amount for which the Florida lands were sold by the executrix of T. C. Bolling, since the war. The one-fourth, three hundred dollars, ($300,) with interest from the 23d May, 1867, the date of the filing of the defendant's answer, will amount, on December 8th, 1870, to three hundred and seventy-four 37-100 dollars. The complainants, Mrs. Workman and Mrs. McDavid, are each entitled to one-seventh of this amount, which is fifty-three 48-100 dollars; this added to three hundred and sixteen 36-100 dollars, makes three hundred and sixty-nine 84-100 dollars, ($369.84,) due Mrs. Workman and Mrs. McDavid, on the 8th December, 1870.

His Honor the presiding Judge then made a second decree, as follows:

ORR, J. On hearing the report above, it is ordered by the Court that the same be confirmed and made the judgment of the Court.

The complainants appealed on the same grounds taken in the exceptions except the third; and, also, on the ground:

4. Because His Honor erred in his said decree, in not allowing such of the complainants as he held were entitled to recover, more than fifty cents in the dollar.

*Sullivan,* for appellants, made the following points:

1. That the claim of complainants against the executrix of T. C. Bolling was a debt established against her testator by the decree of the Court of Ordinary, so far as the personal estate of Mary A. Bolling, his testatrix, was concerned, and irrevocable,

and not a fund for investment, either under the will of Mary A.
Bolling, deceased, or said decree; but a fund to be paid over at
*once.*

*Maxwell* vs. *Conner,* 1 Hill Ch., 14. Where the payee of a pro-
missory note, by contract with the principal maker, extends the time
of payment without the consent of the surety, the latter is dis-
charged, and he may avail himself of this defense in a Court of
law; but having failed to do so, he cannot afterwards obtain relief
in equity—the matter is *res judicata.*

*McClure* vs. *Miller,* Bail. Eq. Report, 110. That which has been
once adjudicated is final and conclusive between the same parties.
The rule goes further. In the case of *Leguen* vs. *Gouverneur &*
*Kemble,* 1 Johns. Ch. R., 436, the rule was held to be, that what the
parties have once had an opportunity of litigating in the course of
a judicial proceeding, they shall not bring into question again.

*Manigault* vs. *Deas,* Bail. Eq. Rep., 293. It may be laid down,
as a general rule, that a direct final judgment of a Court of com-
petent jurisdiction, on the same subject-matter, between the same
parties and privies in law or estate, is conclusive, and cannot be re-
examined in a subsequent original action in the same *or* any other
Court.

*Snelling* vs. *McCreary,* 14 Rich. Eq , 291. By a decree made in
1859, a trustee was ordered to invest certain moneys in slaves, if, in
his judgment, said investment can be made on advantageous terms,
and that until said investment be made, he do pay the annual in-
terest accruing on said trust fund to his *cestui que trust.* The trustee
made no investment in slaves, but retained the trust funds in his
own hands, paying the interest for several years to his *cestui que*
*trust,* until 1863, when he invested it in Confederate 7 per cent.
bonds, having first, on his own petition, and without notice to his
*cestui que trust,* obtained an order for leave to make the investment.
Held that the trustee was not justified in making the investment in
Confederate bonds, and he was ordered to account for the fund to
his *cestui que trust.*—Act of Assembly, 1861. Pamphlet of Acts of
1861, page 87, applies only to trustees holding funds in trust for in-
vestment, and is not applicable to this case.

2. If said executor had really, and in fact, invested complainants'
funds as alleged, it was an act done in aid of the late rebellion
against the United States, and illegal and void. *Shortridge et al.* vs.
*Macon,* American Law Times Report, volume 1, page 35. The war
against the United States, held by Chief Justice Chase to be a re-

bellion; and payment of a debt due plaintiffs of Pennsylvania, under a judgment of sequestration to Confederate Receiver, no release or satisfaction of plaintiffs' demand, either for principal or interest.

*Head et al.* vs. *Tulley*, Administrator, Law Times United States Court Reports, Vol. 3, January No., 1870. Funds invested in Confederate bonds illegal and void.

*Hall & Hall* vs. *Hall et al.*, American Law Times Report, Vol. 2, page 33 of July No., 1869. A guardian will not be excused from accounting for his wards' money, which was received by him in this State during the year 1861, in specie or current bank notes, and afterwards converted by him, without an order of the proper Court, into Confederate Treasury notes, or Confederate interest-bearing bonds, and which estate was thereby finally lost and destroyed.

Also, *Hoffman, by Guardian,* vs. *Boon & Booth,* administrators, at same page, per Peck, Chief Justice. The Act of 9th November, 1861, (of Alabama,) entitled "An Act to authorize executors, administrators, guardians and trustees to make loans to the Confederate States, and to purchase and receive, in payment of debts due them, bonds and Treasury notes of the Confederate States, or of the State of Alabama, and coupons which are due on bonds of the Confederate States, and of said State, is in violation of both the Constitution and the public policy of the United States, and is, therefore, null and void. Its purpose was to give encouragement to the rebellion then existing, and aid and comfort to the public enemy of the United States.

3. His Honor the presiding Judge had no power or authority to reduce the claim of complainants, or any of them, to fifty cents in the dollar, on a debt existing before the late war.

*Carwyle* vs. *Harvey*, 15 Rich., 314. In an action on bond, where no evidence is given by defendant, a verdict for only one-fourth of the debt is in violation of law, and a new trial will be ordered.

*Perry,* contra.

July 7, 1871. The opinion of the Court was delivered by

MOSES, C. J. The answer of the defendant, Louisa C. Bolling, admits the decree of the Ordinary, made on the 14th day of April, 1862, as alleged in the bill. She does not aver against it error in fact or in law, but asks to avoid the relief which is sought from it, as the judgment of a Court, with competent jurisdiction, by subse-

30A

quent circumstances, none of them amounting to such an independent transaction as can, in any way, supersede the rights which it confers.

The decree is conclusive as to all matters which arose prior to its date.—*Chambers* vs. *Patton*, 1 Bail., 130. Even a discount which would have been cognizable before the Ordinary, if it had been submitted, will not be entertained in an action on the decree.—*Ordinary* vs. *McLure*, 1 Bail., 7.

Owing to the anomalous character of the proceeding under our practice in regard to a decree operating as a judgment, which cannot be enforced by the tribunal which renders it, the Courts have somewhat modified the rule which for a long time prevailed, and allow matters in discharge, which have arisen subsequently to the last return of the executor or administrator, though prior to the decree, to be plead against it.—*Simkins* vs. *Cobb*, 2 Bail., 60. The decree, however, is still held conclusive as to the fact of the citation, and the items which compose the account. The defendant here does not complain of any irregularity or defect in the proceeding, which it must be remembered was on the petition of her testator, nor does she charge error in the account on which the decree was founded.

Taking together her answer, the report of the Referee and the decree of the Circuit Court, we are to infer that the claim of the appellants is resisted on the ground that, on the refusal of James M. Sullivan, the guardian of the children interested in the decree, of the Ordinary, to accept in payment of their portion thereof, Confederate Treasury notes, the said T. C. Bolling, on the 19th of August, 1863, invested the same in a Confederate States bond for $3,000, bearing interest at 7 per cent., redeemable after July 1, 1868, which proved valueless, and that he is, therefore, discharged of all liability to answer for the amount found due on the legacy under the will of his testatrix, Mary A. Bolling, to the children of the said Sarah S. Sullivan.

The bond was issued to " T. C. Bolling, in trust for Sarah Sullivan's children, under the will of Mary A. Bolling, deceased."

The Circuit decree does not set forth why the amount due the adult children was reduced by it to one-half the sum which the executor was found by the Ordinary to be indebted to them, nor does it give the reason which induced a discrimination against the minors; and a conjecture might not lead us to the proper considerations which operated to extend relief to the children of age to the extent of one-half the sum which they claimed by their bill, and to deny

all relief to the minors, both standing under the will on an equal footing.

The case was heard on the report of the Referee. The exceptions of the appellants deny the power and authority of the executor to make any investment for them of the amount so found by the Ordinary to be due, and further deny that the pretended investment for them was of the funds of the estate.

When the decree was pronounced by the Ordinary, it established a debt against the said T. C. Bolling in favor of the legatees under the will, of which he was the executor, which could only be satisfied by payment. It was the direct and final judgment of a Court of competent jurisdiction on the accounts of the executor up to the day of its date.

If to that period the executor occupied a fiduciary relation to the legatees, he then became their debtor, and he had no control or power of disposition of the amount so found due. He appeared to have proper conception of the rights which it established against him, when he offered to make payment, though the currency through which he proposed satisfaction was one which the parties or their guardian were not bound to accept. If he undertook to invest the amount, with a view to future payment, in a security which proved worthless, as the risk was his so must be the loss. As well might any other debtor say to his creditor: I offered you payment in a currency which was not a legal tender, you refused to receive it, I have invested the amount in funds which are now without value, and the consequences of the loss must be borne by you. It is to be noticed, too, that the Confederate bond which he caused to be issued to himself on the 19th August, 1863, was not the full amount of principal and interest of the decree, in favor of the Sullivan children.

There is no evidence that after the decree he made any offer to pay such of them as were of age the proportion of it due them. As to the infant children, if he had made an admitted legal tender to their guardian, his refusal to accept would only have subjected him to a loss of the interest; yet having offered that which the other party, it is conceded, was not bound by law to take, the Circuit decree deprives the infant children of the whole amount of the decree rendered in their favor by the proceeding before the Ordinary.

The debt was established by the judgment of a Court of competent jurisdiction against the executor. He admitted its correctness by not prosecuting an appeal to which, by the statute, he was enti-

tled. It is conceded he has not satisfied it; and yet it is claimed that he is discharged, because, looking at the transaction in the light most favorable to him, he invested the amount he owed in a fund which has failed. Is he or the creditor to bear the loss?

If it were necessary, the question might be put with some pertinence—as the decree established a debt subject to immediate payment—how was the amount which was to meet that debt to be with certainty presently realized by a bond which was not to be due for over five years from the time of the decree?

It is ordered and adjudged that the decree in favor of the adult children of Jane C. Sullivan be modified in conformity with the views herein expressed, and as against the minors that it be reversed.

It is further ordered that the said Louisa C. Bolling, as executrix of the said Thaddeus C. Bolling, do pay to Mary Ann Workman, Fanny M. McDavid, J. Mims Sullivan, Harriet E. Sullivan, Joseph W. Sullivan and Jane K. Sullivan, each, one-seventh of twenty-seven hundred and sixty dollars and eleven cents, with interest from the 14th day of April, 1862, until satisfaction shall be therefor made, and also to each of the said named parties the one-seventh of three hundred dollars, with interest from May 23, 1867, until satisfaction shall be therefor made—this last being their share of proceeds of sale of Florida land, referred to in the report—and that the said Louisa C. Bolling do, as executrix as aforesaid, pay to the said Micajah B. Harrison one-third of one-seventh of twenty-six hundred and sixty dollars and eleven cents, with interest from the 14th day of April, 1862, until fully paid; and to the said Sally Harrison the remaining two-thirds of said seventh, with like interest, until fully paid; and that she do also pay to the said Micajah B. Harrison one-third of one-seventh of three hundred dollars, with interest from May 23, 1867, until paid; and to the said Sally Harrison the remaining two-thirds of said seventh, with like interest—this last being also of proceeds of sale of Florida land. The costs to be paid by the said Louisa C. Bolling out of the estate of the said Thaddeus C. Bolling.

The plaintiffs to be at liberty to move the Circuit Court for orders as to further account since date of Ordinary's decree, excluding from it the sale of Florida land already herein provided for.

*Willard*, A. J., and *Wright*, A. J., concurred.